UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
ISRAEL MARCOLINO SCHAFFNER,

      Plaintiff,

   – against –

DIAMOND RESORTS HOLDINGS, LLC,
VICTOR MENNA BARRETO, et al.,

      Defendants.
------------------------------------------------------------ X

**MEMORANDUM AND ORDER**
19-CV-5298 (AMD) (RML)

ANN M. DONNELLY, United States District Judge:

Before the Court is the Diamond defendants' motion for summary judgment on the plaintiff's remaining state law claims. (ECF No. 26.) The plaintiff opposes. (ECF No. 28.) For the reasons that follow, the defendants' motion for summary judgment is granted.

## BACKGROUND[1]

Diamond Resorts is a timeshare company that markets and sells timeshare memberships. (ECF No. 1-2 at ¶ 3.) The plaintiff claims that the company coerces vulnerable senior citizens into entering into timeshare contracts through misrepresentations and fraud. (Id. at ¶¶ 3-18.) According to the complaint, Diamond Resorts used these tactics to coerce Mr. Victor Menna Barreto, an elderly person with limited English comprehension, to enter into timeshare contracts and purchase additional timeshare use rights. (Id. at ¶¶ 8, 14.)[2]

---

[1] I have reviewed the entire record in connection with this motion, and construe the facts in the light most favorable to the plaintiff, the non-moving party. See Capobianco v. City of New York, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

[2] Mr. Barreto is named as a co-defendant in this action, but has not appeared in this case. The plaintiff has not moved for default judgment.

On May 18, 2017, the plaintiff and Mr. Barreto met with a Diamond Resorts salesperson to discuss a timeshare purchase. (ECF No. 1-1 at ¶ 3; ECF No. 1-2 at ¶ 20.) Mr. Barreto asked the plaintiff to pay for the purchase with his credit card. (ECF No. 1-1 at ¶ 5.) The plaintiff agreed, and authorized Diamond Resorts to make a one-time charge to his credit card. (*Id.*) Mr. Barreto later repaid the plaintiff. (*Id.*)

The plaintiff accompanied Mr. Barreto to another meeting with a Diamond Resorts salesperson. (*Id.* ¶ 4.) On August 10, 2018, Mr. Barreto signed a contract to purchase a timeshare membership with Diamond Resorts U.S. Collection Development, LLC. (Def. 56.1 at ¶ 1.) Mr. Barreto and the plaintiff split the $22,502 down payment on the timeshare: Mr. Barreto paid $7,502 and the plaintiff paid three installments of $5,000, $7,000 and $3,000. (*Id.* at ¶ 2.) Although the plaintiff signed forms authorizing each of the three charges, which he made on two different credit cards, he claims that he did not intend to buy any timeshare packages for himself or to cover Mr. Barreto's purchase; he says that he was under the influence of alcohol and does "not recall much of what was the purchase or any details for the purchase were that day." (ECF No. 1-1 at ¶¶ 3-4; ECF No. 26-2 at 16-21.)

On August 20, 2018, Mr. Barreto cancelled the timeshare agreement. (Def. 56.1 at ¶ 4.) Mr. Barreto renegotiated the agreement on August 29, 2018, and entered into a new contract with Diamond U.S. Collection Development, LLC. (*Id.* at ¶ 5.) As part of the renegotiation, Diamond U.S. Collection reduced the down payment from $22,502 to $12,001. (*Id.* at ¶ 6.) To cover the new down payment, Mr. Barreto used $2,001 of his original $7,502 contribution and $10,000 of the plaintiff's original contribution. (*Id.*) The defendants refunded the remaining $5,501.00 to Mr. Barreto, and $5,000 to the plaintiff. (*Id.*; ECF No. 26-2 at 43.)

On September 7, 2018, the plaintiff emailed a Diamond Resorts employee to dispute all three charges; the employee explained that the plaintiff had been refunded $5,000, but that the charges for $3,000 and $7,000 were put towards Mr. Barreto's new down payment. (Def. 56.1 at ¶¶ 7-8.) The plaintiff then disputed the transactions with his credit card company, which found in his favor as to the $7,000 charge, but concluded that the $3,000 charge had been authorized. (*Id.* at ¶ 9; ECF No. 26-2 at 41.) The plaintiff claims that he did not receive a refund for the unauthorized $7,000 charge. (ECF No. 28 at 7.) He also alleges that the defendants "made a collage with Plaintiff's signature and provided false misleading statements and the banks mailed to Plaintiff's [sic] letter stating that the defendants had submitted proof that Plaintiff authorized when Plaintiff never did." (ECF No. 1 at 34.)

On August 28, 2019, the plaintiff filed a complaint in the Supreme Court of the State of New York, County of Queens, alleging both state law claims and violations of the Fair Credit Billing Act and the Truth in Lending Act. (ECF No. 1-2.) On September 17, 2019, the defendants removed the action to the Eastern District of New York. (ECF No. 1.) The Diamond defendants moved to dismiss the complaint for lack of standing on September 24, 2019. (ECF No. 6.) On June 1, 2020, I granted the defendants' motion to dismiss the plaintiff's federal claims, but allowed his state law claims for intentional infliction of emotional distress and for violations of Section 349 of New York's General Business Law to proceed. (ECF No. 9.) I denied the defendants' motion for reconsideration on July 13, 2020. (ECF No. 23.)

The Diamond defendants moved for summary judgment on January 29, 2021. (ECF No. 26.) The plaintiff opposes. (ECF No. 28.)

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 453-54 (S.D.N.Y. 2012) ("While disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." (quoting *Anderson*, 477 U.S. at 248))). "Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). In deciding whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salomon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008).

Because the plaintiff is *pro se*, the Court must construe his brief and supporting papers liberally "to raise the strongest arguments [that] they suggest." *Bertin v. United States*, 478 F.3d

489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).[3]

However, this does not mean that a plaintiff is exempt from the evidentiary requirements of responding to a summary judgment motion; indeed, he "must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *McAfee v. Law Firm of Forster & Garbus*, No. 06-CV-2925, 2008 WL 3876079, at *2 (E.D.N.Y. Aug. 18, 2008) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)); *see also Shankle v. Andreone*, No. 06-CV-487, 2009 WL 3111761, at *2 (E.D.N.Y. Sept. 25, 2009) ("bald assertions" are insufficient to overcome a motion for summary judgment).

## DISCUSSION

### I. Intentional Infliction of Emotional Distress

Damages for intentional infliction of emotional distress are available under New York law where a defendant engages in "extreme and outrageous conduct, which so transcends the bounds of decency so as to be regarded as atrocious and intolerable in a civilized society." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014) (quoting *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985) (quotation marks omitted)). "To prevail on such a claim, a plaintiff must establish that there was 'extreme and outrageous conduct,' that the conduct was undertaken with 'intent to cause, or disregard of a substantial probability of causing, severe emotional distress,' and that the conduct did in fact cause severe emotional distress." *Id.* at 157-58 (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)); *see Stuto v. Fleishman*, 164

---

[3] The record reflects that the defendants complied with Local Rule 56.2 and gave the plaintiff notice of his obligations in response to their motion for summary judgment. (ECF No. 27.) The plaintiff responded to the defendants' motion with a memorandum of law that includes a detailed factual statement, but did not submit an independent 56.1 counter statement. (ECF No. 28.) In light of the plaintiff's *pro se* status, I construe the factual statement in his memorandum as his 56.1 statement. *Ige v. Command Sec. Corp.*, No. 99-CV-6916, 2002 WL 720944, at *1 (E.D.N.Y. Mar. 12, 2002) (excusing a *pro se* plaintiff's failure to strictly comply with Local Civil Rule 56.1 and "constru[ing] the facts in his memorandum in opposition and deposition testimony to constitute his counter statement").

F.3d 820, 827 (2d Cir. 1999) ("Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.").

"New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir.1996)); *see also Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir. 1995) ("We have noted that New York courts have been 'very strict' in applying these elements."). Indeed, "New York courts have found liability for intentional infliction of emotional distress 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Restis*, 53 F. Supp. 3d at 729 (quoting *Stuto*, 164 F.3d at 827) (additional citations omitted). An intentional infliction tort may "be invoked only as a last resort . . . to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal citations omitted).

The plaintiff cites the defendants' actions in connection with the credit card dispute to support his claim of intentional infliction of emotional distress. But the evidence in this case, even when read in the light most favorable to the plaintiff, does not meet the high threshold necessary to establish intentional infliction of emotional distress. Indeed, "there is nothing upon which the Court can even vaguely find a question of fact regarding any conscience-shocking or outrageous behavior" by the defendants. *Wisdom v. Cty. of Nassau*, No. 16-CV-1728, 2020 WL 1919354, at *10 (E.D.N.Y. Apr. 20, 2020), *report and recommendation adopted*, 2020 WL

2572263 (E.D.N.Y. May 21, 2020). While the plaintiff asserts that his credit disputes with the defendants caused "emotional distress resulting in symptoms such as Anxiety Disorder, Depression, lack of concentration, Panic Disorder and currently relying on medications," the record is devoid of any 'outrageous conduct' that could justifiably cause this distress. (ECF No. 1-2 at ¶ 31.) No reasonable juror would find that the evidence on this record establishes conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *See Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 56 (2016).

Accordingly, the plaintiff's claim for intentional infliction of emotional distress fails as a matter of law.

## II. Section 349 of New York's General Business Law

Section 349 of New York's General Business Law forbids "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Gen. Bus. § 349(a). To state a prima facie case under § 349, a plaintiff must show "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 33 (E.D.N.Y. 2006), *aff'd*, 213 F. App'x 16 (2d Cir. 2007) (quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)).

As an initial matter, the plaintiff has not shown that the defendants' conduct was "consumer-oriented" for the purposes of the General Business Law. To show consumer-oriented conduct, the "plaintiff would have to 'demonstrate that the acts or practices [complained of] have a broader impact on consumers at large. Private contract disputes, unique to the parties . . . would not fall within the ambit of the statute.'" *Vitolo*, 426 F. Supp. 2d at 34 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25(1995)).

Section 349 "liability attaches primarily where a party's misrepresentations are boilerplate and have the potential to be repeated in order to deceive numerous similarly situated buyers." *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004). Conversely, contracts that are not "standard-issue," but are instead designed to provide services "tailored to meet the [plaintiff's] wishes and requirements" are not consumer-oriented for § 349 purposes. *Id.* (citing *N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308 (1995)).

The plaintiff has not alleged that the defendants' actions affected "the consuming public at large." *N.Y. Univ. v. Cont'l Ins. Co.*, 639 N.Y.S.2d 283, 291 (1995). According to the plaintiff, Mr. Barreto had a private meeting with the Diamond defendants to negotiate a timeshare contract, and later renegotiated that same contract for a more favorable rate. The plaintiff financed a portion of the down payment of the timeshare, and then disputed the payment with his credit card company. His individual investment and dispute with the defendants over a refund is the "paradigmatic private dispute 'unique to the parties [that does not] fall within the ambit' of Section 349." *HSM Holdings, LLC*, No. 20-CV-967, 2021 WL 918556, at *21 (quoting *Oswego*, 623 N.Y.S.2d at 533.). *See also Genesco Entertainment v. Koch*, 593 F. Supp. 743, 751 (S.D.N.Y.1984) ("The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising.").[4]

---

[4] The defendants also argue that the plaintiff has not adduced "any evidence against any of the named Diamond Defendants," and that the counterparty to Mr. Barreto's timeshare transaction, Diamond Resorts U.S. Collection Development, LLC, is not a party to this litigation. (ECF No. 26 at 10-11.) Because the plaintiff's claims fail on the merits, I do not address this argument.

## CONCLUSION

For the reasons explained above, I grant the Diamond defendants' motion for summary judgment on all of the plaintiff's claims. The Clerk of Court is respectfully directed to mail a copy of this order to the *pro se* plaintiff and enter judgment in favor of the moving defendants. The plainitff may move for default judgment against the remaining defendant within 30 days; if he does not do so, the Court will conclude that he has abandoned his claims, and will close this case.

**SO ORDERED.**

                  s/Ann M. Donnelly
                  _____
                  ANN M. DONNELLY
                  United States District Judge

Dated: Brooklyn, New York
    June 24, 2020